UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
JOHN R. BRADLEY,                                    Chapter 7
        DEBTOR.                               Case No. 10-16021-WCH


BRIDGET GORDON,[1]
        PLAINTIFF,
                                                    Adversary Proceeding
v.                                                  No. 10-1239

JOHN R. BRADLEY,
        DEFENDANT.


**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matter before the Court is the Complaint filed by the plaintiff Bridget Gordon (the "Plaintiff") through which she seeks a determination that a debt owed to her by her former spouse, the debtor-defendant John R. Bradley (the "Defendant"), is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) as a debt for a willful and malicious injury. Following the filing of their Joint Pre-Trial Statement,[2] I conducted a trial on May 28, 2014, at which the Plaintiff and her expert witness, Dr. Howard E. Pitchon, M.D. ("Dr. Pitchon"), testified and four exhibits were introduced into evidence. At the close of the Plaintiff's case and upon the

---

[1] At the commencement of this case, I granted the Plaintiff's motion to impound certain documents in order to protect her identity. From that point on, the Plaintiff was identified as "B.B." in this adversary proceeding. At trial, I granted the Plaintiff's oral motion to remove the seal. Trans. May 28, 2014 at 14:12-24.

[2] Joint Pre-Trial Statement ("JPTS"), Docket No. 69. Although the parties separately numbered the paragraphs of the JPTS in accordance with the Court's Pre-Trial Order, they did not identify the sections of the JPTS with roman numerals. Therefore, I supply those roman numerals in my citations for purposes of clarity.

1

Defendant's motion, I entered judgment for the Defendant on partial findings pursuant to Fed. R. Civ. P. 52(c), made applicable to adversary proceedings by Fed. R. Bankr. P. 7052.[3] Although I ruled from the bench, I informed the parties that I would enter separate judgment accompanied by a memorandum setting forth my findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a).[4] Now, for the reasons set forth below, I will enter judgment for the Defendant.

## II. BACKGROUND

### A. Pre-Trial Procedural History

The Defendant filed a voluntary Chapter 7 petition on June 1, 2010. On August 30, 2010, the Plaintiff commenced the present adversary proceeding seeking to except a debt arising from a California Superior Court judgment (the "California Judgment") from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(6). The Judgment, which was attached to the complaint, stated in relevant part:

> Witnesses were sworn and testified. Oral and documentary evidence was introduced on behalf of the respective parties and the cause was argued and submitted for decision. After hearing the evidence and arguments, the Court finds in favor of:
>
> Plaintiff Bridget Gordon and against Defendant John Bradley on all causes of action including: (1) Negligence; (2) Negligent Infliction of Emotional Distress; (3) Intentional Infliction of Emotional Distress; and (4) Fraud; and further finds that Defendant John Bradley acted with fraud and malice; and that Plaintiff Bridget Gordon suffered and will suffer past and future loss of earnings in the amount of $5,000,000.00 and general damages in the amount of $7,500,000.00. . . .[5]

---

[3] The Defendant actually moved for judgment as a matter of law under Fed. R. Civ. P. 50, but that rule only applies to jury trials.

[4] In order to preserve the parties' appellate rights, the proceeding memorandum entered on May 28, 2014 merely states that the trial was held and concluded, and that a separate judgment will enter.

[5] Plaintiff's Ex. 5.

2

The California Judgment did not identify the acts which gave rise to the Plaintiff's damages. In her complaint, however, the Plaintiff alleged that "the Defendant caused willful and malicious injury to [her] by giving her a potentially deadly, sexually transmitted disease, causing her physical harm and emotional distress and incurrence of monetary loss."[6] The Defendant filed an answer on September 19, 2010.

On June 29, 2011, the Plaintiff moved for summary judgment, asserting that "[b]ased upon intentional infliction of emotional distress, the Defendant [was] collaterally [e]stopped from re-litigating the issue of fraud and malice and the issue of dischargeability pursuant to 11 U.S.C. Section 523(a)(6)."[7] The Defendant opposed the motion, arguing that the California Judgment's provisions were too imprecise to establish that the state court had conclusively determined all the elements required under 11 U.S.C. § 523(a)(6). I heard the matter on July 27, 2011, and, after oral arguments, granted the Plaintiff's motion for summary judgment, concluding that "the language of the California judgment, which I can't go behind under *Rooker–Feldman*, is sufficient to satisfy [§] 523(a)(6)."[8] The Defendant filed a timely notice of appeal to the United States Bankruptcy Appellate Panel for the First Circuit.

On March 7, 2012, the Panel issued a decision vacating my order granting summary judgment and remanding the matter for further proceedings.[9] As reason therefor, the Panel

---

[6] Complaint Objecting to Dischargeability of Debt ("Complaint"), Docket No. 1 at ¶ 17.

[7] Motion of Plaintiff for Summary Judgment, Docket No. 11 at ¶ 3.

[8] Trans. July 27, 2011 at 9:9-11. The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court of the United States held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. 263 U.S. at 415-16. In *Feldman*, the Supreme Court held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. 460 U.S. at 486-87.

[9] *B.B. v. Bradley (In re Bradley)*, 466 B.R. 582, 584 (B.A.P. 1st Cir. 2012).

3

explained that under California law, the tort of intentional infliction of emotional distress includes "extreme and outrageous conduct by the defendant with . . . *reckless disregard of the probability of causing*, emotional distress,"[10] which does not satisfy the specific intent requirement set forth in *Kawaauhau v. Geiger*.[11] The Panel also noted that because the Plaintiff "ha[d] not 'pinpointed' the factual issues actually litigated and necessarily determined in the California case, 'reasonable doubt' remain[ed] about what was actually decided there."[12]

On remand, I issued a pre-trial order requiring the parties to file a joint pre-trial statement, which they ultimately did on September 6, 2013. The agreed facts stated below are drawn from the Joint Pre-Trial Statement.

B. <u>Agreed Facts</u>

The Plaintiff and the Defendant met in 1998.[13] The Plaintiff had previously tested negative for human immunodeficiency virus ("HIV") in 1995.[14] Between her negative test in 1995 and meeting the Defendant in 1998, the Plaintiff did not engage in any behavior that could plausibly expose her to the HIV virus.[15] While they were dating, the Defendant indicated to the Plaintiff that he was healthy, and repeatedly told her that he was committed to a long term,

---

[10] *Id.* at 587 (*quoting Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996)) (emphasis in original).

[11] *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998).

[12] *In re Bradley*, 466 B.R. at 588.

[13] JPTS, Docket No. 69 at ¶ II.6.

[14] *Id.* at ¶ II.2.

[15] *Id.* at ¶ II.6.

4

monogamous relationship.[16] He never disclosed to her that he had engaged in conduct that would have exposed him to HIV.[17]

The Plaintiff and the Defendant were married on July 29, 2000.[18] From July 30, 2000 to August 10, 2000, they traveled to Bora Bora for their honeymoon.[19] On the flight home, the Defendant became ill, and upon arrival in Los Angeles, could not handle their luggage or stand for more than a few minutes at a time.[20] The Defendant saw Dr. Robert Waxler, M.D. ("Dr. Waxler"), who was unable to determine why he was ill with a high fever.[21]

In late September of 2000, the Plaintiff began to feel ill while traveling in Connecticut.[22] Upon her return home, the Plaintiff visited Dr. Waxler, who ordered a battery of tests, including one for HIV, in light of the Defendant's unexplained illness six weeks earlier.[23] On October 3, 2000, the Plaintiff tested positive for HIV.[24] Shortly thereafter, the Defendant also tested positive for HIV.[25]

---

[16] Id. at ¶¶ II.7-8.

[17] *Id.* at ¶ II.9.

[18] *Id.* at ¶ II.3.

[19] *Id.* at ¶ II.4.

[20] *Id.* at ¶ II.10.

[21] *Id.* at ¶ II.11.

[22] *Id.* at ¶ II.12.

[23] *Id.* at ¶ II.13.

[24] *Id.* at ¶ II.5.

[25] *Id.* at ¶ III.1. Although this fact appears in the "Issues of Fact . . . To Be Litigated" section of the JPTS, it is clear that the Defendant acknowledges that he was subsequently tested for HIV and tested positive.

In February 2002, the Plaintiff discovered that the Defendant had been visiting sexually explicit homosexual websites.[26] Ultimately, the Plaintiff filed a complaint against the Defendant in Los Angeles Superior Court (the "California Litigation").[27] The California Litigation was subject to a bench trial on October 14, 2008.[28] On December 31, 2008, the judge entered the California Judgment, which the Defendant did not appeal.[29]

C. The Trial Record

1. Evidentiary Issues and the Admission of Exhibits

At the start of trial, I addressed several evidentiary issues. First, having previously reviewed the Joint Pre-Trial Statement, I noted that the Defendant intended to re-argue the merits of the his liability. After a colloquy with counsel, I ruled that notwithstanding the Panel's observations on appeal, the California Judgment necessarily established two things: (1) that the Plaintiff suffered an injury; and (2) that the Plaintiff's injury was a result of the Defendant's actions. As such, I barred any testimony with respect to injury or causation under the doctrine of collateral estoppel.[30] It nevertheless remained incumbent on the Plaintiff to, in the words of the

---

[26] *Id.* at ¶ II.14.

[27] *Id.* at ¶ II.15.

[28] *Id.* at ¶ II.16.

[29] *Id.* at ¶¶ II.17-19.

[30] "Under the full faith and credit statute, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent nondischargeability proceeding under federal bankruptcy law is governed by the collateral estoppel law of the state from which the judgment is taken." *Stowe v. Bologna (In re Bologna)*, 206 B.R. 628, 630–631 (Bankr. D. Mass. 1997). Under California law, the doctrine of collateral estoppel applies if the following five requirements are satisfied:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Lucido v. Superior Court*, 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990).

Panel, "'pinpoint[]' the factual issues actually litigated and necessarily determined in the California [Litigation]."[31]

To establish that the basis of the California Judgment, the Plaintiff offered into evidence two trial transcripts from California Litigation. The Defendant objected to their admission on hearsay grounds because the Plaintiff had not demonstrated that the witnesses in the California Litigation were unavailable under Fed. R. Evid. 804(a)(5).[32] In response, the Plaintiff asserted that the Plaintiff, Defendant, and Dr. Pitchon would, in fact, be testifying, but that the transcripts were otherwise being offered for a non-hearsay purpose. Because the authenticity of the transcripts was not disputed and I agreed that they constituted non-hearsay evidence to ascertain the basis of the California Judgment, I overruled the objection. The transcripts were admitted as Plaintiff's Exhibits 1 and 2.[33] Having reviewed these exhibits, it is apparent that the subject matter of the California Litigation involved the same allegations as the present adversary proceeding—that the Defendant exposed the Plaintiff to HIV.[34]

---

[31] *In re Bradley*, 466 B.R. at 588.

[32] Fed. R. Evid. 804(a)(5) provides in relevant part:

> (a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:
> 
> * * *
> 
> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
> (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or
> (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Fed. R. Evid. 804(a)(5).

[33] *See* Plaintiff's Exs. 1-2.

[34] *Id.* I further note that I was afforded the opportunity to review these transcripts during the two hour recess between the Plaintiff's and Dr. Pitchon's testimony.

7

In addition to the transcripts, the Plaintiff offered the California Judgment into evidence, to which the Defendant objected on the basis of relevancy. He argued that the Panel already determined that the California Judgment is inapplicable to the standard under 11 U.S.C. § 523(a)(6). Having already acknowledged that the California Judgment does not establish all the elements of 11 U.S.C. § 523(a)(6), and having previously ruled it was conclusive as to injury and causation, I overruled the Defendant's objection. The California Judgment was admitted as Plaintiff's Exhibit 5.[35]

The Plaintiff also sought admission of a series of the Defendant's emails which she said evidenced a continuation of the Defendant's sexual liaisons which the Plaintiff alleged started before their marriage and resulted in her injury.[36] The Defendant again objected on relevancy grounds, arguing that the earliest email post-dates the relevant time period by six months.[37] I sustained the objection, concluding that post-hoc emails were not relevant to the question of prior intent.

Finally, the Defendant offered a lab report dated June 28, 2000 indicating he tested negative for HIV. The Plaintiff objected to the admission of the lab report on the basis that there was no foundation.[38] The Defendant responded that he would build such a foundation through his testimony.[39] I overruled the objection and admitted the lab report as Defendant's Exhibit 1 "for what it's worth."[40]

---

[35] *See* Plaintiff's Ex. 5.

[36] Trans. May 28, 2014 at 9:18-25; 10:1-13; 11:5-17.

[37] *Id.* at 10:14-25; 11:1-2.

[38] *Id.* at 12:24-25; 13:1-9.

[39] *Id.* at 13:11-20.

[40] *Id.* at 13:24-25.

2. The Plaintiff's Testimony

At trial, the Plaintiff provided background testimony regarding her relationship with the Defendant and how she came to learn that she was infected with HIV. Because these facts were already stipulated and do not speak to the Defendant's intent or subjective knowledge, I need not summarize them further. Beyond the agreed facts stated above, it suffices to say that the only time the Plaintiff and Defendant had unprotected sexual intercourse was on their honeymoon.[41]

Notably, however, the Plaintiff testified at length about the discussions she and the Defendant had prior to getting married. She explained that the Defendant disclosed his sexual history and that, due to a traumatic childhood event, he had engaged in sexual intercourse with "a lot of people."[42] At some point, they also agreed that their relationship was monogamous.[43] Before marrying, the Plaintiff and the Defendant also participated in a rigorous engagement encounter program provided by the Catholic Church during which they explored their personal history and their relationship expectations.[44] Although the Plaintiff testified that the Defendant had been honest with her about some things his past,[45] at no point during these discussions did the Defendant inform her of any prior relationships with men.[46]

During the same period of time, the Defendant represented to the Plaintiff that he was in excellent health which, based on her own observations, she believed.[47] Additionally,

---

[41] *Id.* at 26:14-17; 29:15-18; 34:3-5.

[42] *Id.* at 19:3-25; 20:1-9.

[43] *Id.* at 21:5-14.

[44] *Id.* at 21:17-25; 22:1-19.

[45] *Id.* at 44:16-25; 45:1-14.

[46] *Id.* at 22:17-22.

[47] *Id.* at 20:14-25; 21:1-2.

immediately prior to getting married, the Plaintiff received a phone call from the Defendant's doctor's office informing her that he tested negative for HIV.[48] The Plaintiff further testified that the Defendant tested negative for HIV a second time in conjunction with a life insurance health exam shortly after returning home from their honeymoon.[49]

The Plaintiff testified that only after they had both tested positive for HIV and she had read an article regarding HIV transmission rates did the Defendant disclose that he had homosexual sexual intercourse prior to the marriage.[50] In December 2001, the Defendant informed her that he was a sex addict and had undergone counseling.[51]

### 3. Dr. Pitchon's Testimony[52]

Dr. Pitchon is a specialist in internal medicine and infectious disease affiliated with Cedars-Sinai Medical Center in Los Angeles, California, and Brotman Medical Center in Culver City, California.[53] Approximately sixty percent of his practice involves infectious diseases and he has treated several hundred patients infected with HIV.[54] Dr. Pitchon has been retained as expert witness on infectious diseases approximately three to four hundred times, and testified as the Plaintiff's expert witness in the California Litigation.[55]

---

[48] *Id.* at 40:22-25; 41:1-13.

[49] *Id.* at 43:24-25; 44:1-9.

[50] *Id.* at 30:3-11; 32:1-14.

[51] *Id.* at 33:1-20.

[52] Dr. Pitchon appeared via video during the trial.

[53] Trans. May 28, 2014 at 53:22-25; 54:1-7.

[54] *Id.* at 54:8-19.

[55] *Id.* at 52:5-14; 54:20-25; 55:1-9.

At trial, Dr. Pitchon explained that HIV is primarily spread through sexual intercourse, but may also be transmitted through blood transfusions or products, intravenous drug use, and improperly cleaned tattoo or piercing equipment.[56] He testified that HIV is much more prevalent in the homosexual community.[57] Dr. Pitchon further testified that, in light of this increased prevalence, there is a readily accessible general body of knowledge and a greater level of awareness in the homosexual community regarding HIV and its transmission.[58]

Although Dr. Pitchon opined that the infection had been transmitted from the Defendant to the Plaintiff, he conceded that he never examined the Defendant or had the opportunity to observe him at any time prior to his positive HIV test.[59]

### 4. The Defendant's California Litigation Testimony

The Plaintiff did not call the Defendant as a witness, and, in light of the Defendant's motion under Fed. R. Civ. P. 52(c) (the "Rule 52(c) Motion"), the Defendant did not testify. The Plaintiff, however, read portions of the Defendant's testimony from the California Litigation into the record.[60] In sum, the excerpt reflects that at the time the Defendant married the Plaintiff, he knew: (1) what HIV was; (2) that it was transmitted by sexual conduct; (3) that there was no cure for HIV; (4) that having unprotected sexual intercourse created or posed a risk for contracting HIV; (5) that having unprotected sexual intercourse with multiple people about whom he knew

---

[56] *Id.* 57:21-25; 58:1-13.

[57] *Id.* at 58:16-25.

[58] *Id.* at 64:2-12.

[59] *Id.* at 61:14-25; 62:1-6; 64-67.

[60] *See* Fed. R. Evid. 801(d)(2)(A) (a prior statement made by an opposing party is not hearsay).

little was a high risk activity in regards to contracting HIV; and (6) that HIV was prevalent in the homosexual community.[61]

   D. The Rule 52(c) Motion

After the Plaintiff and Dr. Pitchon testified, the Plaintiff rested.  As the Defendant previously suggested he would earlier in the proceeding, the Defendant moved for judgment on partial findings, asserting that there had been a complete failure of evidence on the element of intent.[62]  Both parties presented oral arguments, which are summarized below.

**III. POSITIONS OF THE PARTIES**

   A. The Defendant

The Defendant argues that the Plaintiff failed in her burden of proving that he intended to injure her, or knew that, based on his conduct, an injury was substantially certain to occur. Indeed, he asserts that there was no evidence introduced at trial regarding his conduct or state of mind prior to the marriage that would allow a finder of fact to find those elements in her favor. To the contrary, the Defendant contends that the Plaintiff admitted that he was honest with her in the months leading up to their marriage by disclosing his sexual history, childhood trauma, and past counseling.  He notes that the Plaintiff also testified that to her knowledge, the Defendant tested negative for HIV about a month prior to their wedding, and again about a month after. The Defendant emphasizes that he does not admit to engaging in any kind of promiscuous activity in that time period.  Moreover, he urges that the existence of a homosexual relationship does not support an inference that one is HIV positive.

---

[61] Trans. May 28, 2014 at 69:23-25; 70:1-21.  *See* Plaintiff's Ex. 1 at 120-122.

[62] *Id.* at 49:17-25; 50:1.

12

B. The Plaintiff

The Plaintiff contends that the California Judgment and the transcripts of the California Litigation establish that it was the Defendant who transmitted HIV to her. She further asserts that the evidence adduced at trial demonstrates that the Defendant "knew or should have known that the results of the -- of his having unprotected sex with [the Plaintiff] would cause her this problem."[63] Indeed, the Plaintiff contends that "the facts and circumstances of the case before the Court based upon the prior trial testimony clearly indicates that he not only should have known, but he -- there was *reckless indifference* to [the Plaintiff's] well-being."[64] In sum, Plaintiff urges that based on the Defendant's prior homosexual relationships,

> [h]e had all of the earmarks and ultimately transmitted this disease to [the Plaintiff] as found by the state court, didn't care that he had that possibility of transmitting the disease. There's ample evidence, Your Honor, to find the . . . remaining two elements of [11 U.S.C. §] 523(a)(6).[65]

## IV. DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity…."[66] In *Kawaauhau v. Geiger*, the United States Supreme Court explained that the word "willful," as used in 11 U.S.C. § 523(a)(6), "modifies the word 'injury,'" indicating that nondischargeability under that section therefore requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[67] In other words, the defendant must intend the *consequences of an act*, not simply the

---

[63] *Id.* at 71:7-9.

[64] *Id.* at 71:11-14. (emphasis added).

[65] *Id.* at 73:6-10.

[66] 11 U.S.C. § 523(a)(6).

[67] *Kawaauhau v. Geiger*, 523 U.S. at 61-62.

13

act itself. "Thus, recklessly or negligently inflicted injuries are not excepted from discharge under [11 U.S.C.] § 523(a)(6)."[68]

Nevertheless, based on the Supreme Court's citation to the Restatement (Second) of Torts,[69] courts have concluded that the willfulness element also includes actions intentionally done and known by the debtor to be "substantially certain to cause injury."[70] When faced with a debt arising from a physical assault in *In re Hermosilla*, I explained that "injuries resulting from intentional acts known by the debtor to be 'substantially certain to cause injury' are nondischargeable, regardless of whether the debtor had a subjective intent to cause any injury at all."[71] This is because "a debtor knows that physical violence is substantially certain to produce some significant physical harm even if the exact nature of the resulting bodily damage is not known."[72] As recognized by the court in *In re Kane*, however, the "substantial certainty" standard is not without its challenges in other contexts:

> There is some disagreement among the courts as to whether the substantial certainty standard is a subjective standard, requiring the plaintiff to prove that the defendant knew the act was substantially certain to cause injury, or an objective standard, requiring the plaintiff to show that the defendant's act was substantially certain to cause injury without regard to the defendant's actual belief or knowledge in this regard.[73]

---

[68] *Trenwick Am. Reinsurance Corp. v. Swasey (In re Swasey)*, 488 B.R. 22, 34 (Bankr. D. Mass. 2013) (citing *Kawaauhau v. Geiger*, 523 U.S. at 64).

[69] Restatement (Second) of Torts § 8A ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.").

[70] *In re Bradley*, 466 B.R. at 587; *Hermosilla v. Hermosilla (In re Hermosilla)*, 430 B.R. 13, 22 (Bankr. D. Mass. 2010); *McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 18–19 (Bankr. D. Me. 1998).

[71] *In re Hermosilla*, 430 B.R. at 22-24.

[72] *Id.* at 24.

[73] *Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane)*, 470 B.R. 902, 941 (Bankr. S.D. Fla. 2012); *see In re Swasey*, 488 B.R. at 41.

Although I applied an objective standard in *In re Hermosilla*, in this case "a purely objective substantial certainty analysis would bring the court dangerously close to the recklessness standard decried in *Kawaauhau* [*v. Gieger*]."[74] As such, the proper analysis in this context is whether the Defendant knew his actions were substantially certain to cause injury to the Plaintiff.

The United States Court of Appeals for the First Circuit has explained the element of malice under 11 U.S.C. § 523(a)(6) requires the creditor to show that the injury was caused "without just cause or excuse."[75] Therefore, construing *Geiger* and *Printy* together, in order for a debt to be excepted under 11 U.S.C. § 523(a)(6), the creditor must show that:

> (1) the creditor suffered an injury; (2) the injury was the result [of] the debtor's actions; (3) the debtor intended to cause the injury or that there was a substantial certainty that the injury would occur; and (4) the debtor had no just cause or excuse for the action resulting in injury.[76]

Exceptions to discharge must be proven by a preponderance of the evidence.[77]

As previously stated, the California Judgment establishes that the Plaintiff suffered an injury, and that the Defendant was liable for that injury. My review of the California Litigation transcripts indicate that the injury she alleged in that court was based upon being infected with HIV.[78] Therefore, under the doctrine of collateral estoppel, the Plaintiff has established the first two elements under 11 U.S.C. § 523(a)(6).[79] As recognized by the Panel, however, the California Judgment does not establish intent because intentional infliction of emotional distress

---

[74] *In re Kane*, 470 B.R. 942.

[75] *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997).

[76] *In re Hermosilla*, 430 B.R. at 22.

[77] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[78] *See* Plaintiff's Exs. 1-2.

[79] *See In re Bradley*, 466 B.R. at 586.

under California law includes acts done which the actor knows or should realize that there is a *strong probability* that harm may result.[80]

Because a defendant is unlikely to admit that he or she acted with the intent to cause an injury, or had actual knowledge an injury would result, "the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action."[81] At trial, the Plaintiff testified that the Defendant represented to her, and she believed based on her own observations, that he was in excellent health.[82] Moreover, a month prior to the wedding, the Defendant tested negative for HIV.[83] Assuming, as I must, that the Defendant infected the Plaintiff during their honeymoon, this evidence suggests that he was unaware of his own infection at that time.

The Plaintiff makes much of the fact that the Defendant engaged in homosexual sexual intercourse prior to their relationship because Dr. Pitchon testified that HIV is more prevalent in the homosexual community.[84] The California Litigation transcripts reveal that the Defendant was aware of that fact, and further understood that engaging in unprotected sexual intercourse with multiple partners about whom he knew little increased the risk of contracting HIV.[85] Nevertheless, these facts do not establish a substantial certainty. To the contrary, the evidence suggests only an increased risk of injury, which, at best, is consistent with the "strong probability

---

[80] *Id.* at 588-589 (*quoting Doughty v. Hill (In re Hill)*, 265 B.R. 270, 276 (Bankr. M.D. Fla. 2001)).

[81] *Carrillo v. Su (In Re Su)*, 290 F.3d 1140, 1146 n. 6 (9th Cir. 2002).

[82] Trans. May 28, 2014 at 20:14-25; 21:1-2.

[83] Defendant's Ex. 1; Trans. May 28, 2014 at 40:22-25; 41:1-13.

[84] Trans. May 28, 2014 at 58:16-25.

[85] *Id.* at 69:23-25; 70:1-21. *See* Plaintiff's Ex. 1 at 120-122.

of harm" standard for intentional infliction of emotion distress under California law.[86]  I further note that Plaintiff's counsel's argument in opposition to the Rule 52(c) Motion was premised on the Defendant's alleged "*reckless* indifference to [the Plaintiff's] well-being"[87] and that he "didn't care that he had that *possibility* of transmitting the disease."[88]  While an injury may have been possible, or even strongly probable, 11 U.S.C. § 523(a)(6) requires a substantial certainty of injury.

Ultimately, the Plaintiff put forth absolutely no evidence that the Defendant intended to cause her an injury, or knew that one was substantially certain to occur from his acts.

## V. CONCLUSION

In light of the foregoing, I will enter a judgment for the Defendant.

                                                                                       William C. Hillman
                                                                                       United States Bankruptcy Judge

Dated: June 11, 2014

Counsel Appearing:

    Gary W. Cruickshank, Law Office of Gary W. Cruickshank, Boston, MA,
         for Bridget Gordon
    Dmitry Lev, Law Offices of D. Lev, P.C., Watertown, MA,
         for John R. Bradley

---

[86] *In re Hill*, 265 B.R. at 276.

[87] Trans. May 28, 2014 at 71:11-14. (emphasis added).

[88] *Id.* at 73:6-10 (emphasis added).